IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

D.R., R.V., and S.S., proceeding under pseudonyms,

Plaintiffs,

v.

STATE OF OREGON, by and through the Oregon Youth Authority,

SCOTT J. SCRABECK, former correctional officer at Hillcrest Youth Correctional Facility, in his individual capacity,

RICHARD HILL, former Director of Oregon Youth Authority, in his individual capacity,

KAREN BRAZEAU, former Director of Oregon Youth Authority, in her individual capacity,

ROBERT JESTER, former Director of Oregon Youth Authority, in his individual capacity,

DIRECTORS #4-5, current and former State of Oregon employees, in their individual capacities,

Case No. 3:25-cv-01723-SB

**OPINION AND ORDER**

CHRIS DUVAL, former Superintendent of Hillcrest Youth Correctional Facility, in his individual capacity,

MIKE RIGGAN, former Superintendent of Hillcrest Youth Correctional Facility, in his individual capacity, and

SUPERINTENDENTS #3-5, current and former State of Oregon employees, in their individual capacities,

Defendants.

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs D.R., R.V., and S.S., proceeding under pseudonyms (together, "Plaintiffs"), filed this action against twelve defendants: (1) Scott Scrabeck ("Scrabeck"), a former correctional officer at Hillcrest Youth Correctional Facility ("Hillcrest"), (2) the State of Oregon, by and through the Oregon Youth Authority ("OYA"), (3) Richard Hill, former director of OYA from 1996-2000, (4) Karen Brazeau, former director of OYA from 2001-2004, (5) Robert Jester, former director of OYA from 2004-2008, (6-7) Directors #4-5, current and former employees of OYA, (8) Chris Duval, former Superintendent of Hillcrest from 1996-2006, (9) Mike Riggan, former Superintendent of Hillcrest from 2007-2008, and (10-12) current and former Superintendents #3-5 of Hillcrest (the Court refers to Defendants (2)-(12) as the "State Defendants"). (Second Am. Compl. ("SAC") at 2-6, ECF No. 37.)

Plaintiffs assert three federal claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of their constitutional rights, two claims under the Oregon Tort Claims Act ("OTCA") for negligence and direct battery, and one state law claim for sexual battery of a child under a theory of *respondeat superior*. (*Id.* at 21-31.) D.R. and R.V. allege Fourteenth Amendment

substantive due process claims against Scrabeck and S.S. alleges an Eighth Amendment claim against Scrabeck. (*Id.* at 22, 27.)

Now before the Court is Scrabeck's motion to dismiss all claims against him. (Def.'s Second Mot. Dismiss, ECF No. 42; *see also* Def.'s Reply Supp. Second Mot. Dismiss ("Def.'s Reply"), ECF No. 53.) The State Defendants have joined in Scrabeck's motion to dismiss. (State Defs.' Mot. Joinder, ECF No. 44.) For the reasons discussed below, the Court denies Scrabeck and the State Defendants' motions.

## BACKGROUND

### I. FACTUAL ALLEGATIONS

D.R. and R.V., adults who were formerly adjudicated juveniles, and S.S., an adult who was convicted and formerly committed to OYA's care and custody, allege that Scrabeck sexually abused them during their placement at Hillcrest. (SAC ¶ 1.)

#### A. Plaintiff D.R.

OYA placed D.R. in Hillcrest in or around 2006. (*Id.* ¶ 31.) While at Hillcrest, D.R. alleges that Scrabeck abused her "at least three to four times" when she was "at or around" fifteen to sixteen years old. (*Id.*) Scrabeck's alleged abuse included "groping D.R.'s breasts and vagina under her clothing and unzipping his pants and forcing her to masturbate him" inside a "small visitor's room at Hillcrest." (*Id.* ¶ 32.) Despite a fellow corrections officer observing Scrabeck "quickly zipping up his pants before rapidly exiting the [visitor's] room," OYA did not discipline nor terminate his employment. (*Id.* ¶ 33.) This lack of discipline led D.R. "to believe that any acts of corrections officers . . . including Defendant Scrabeck's sexual acts, were lawful and deserved punishment." (*Id.* ¶ 34.) It was not until around September 2024, when D.R. "saw information online about sexual abuse in juvenile detention settings," that she "began to reflect about her experience with Defendant Scrabeck at Hillcrest." (*Id.* ¶ 37.) At that point, D.R.

"realized for the first time that Defendant Scrabeck's sexual conduct toward her was sexual abuse." (*Id.*)

**B. Plaintiff R.V.**

R.V. was placed in Hillcrest in or around 1999. (*Id.* ¶ 41.) She alleges that beginning "at or around the age of [fifteen]," Scrabeck "abused [her] approximately three times a week for approximately a three-month period." (*Id.* ¶¶ 41-42.) Scrabeck's alleged abuse included him watching "her dress or undress and slap[ping] [her] buttocks or rub[bing] his own penis while watching," following R.V. "into the shower and grop[ing] her buttocks and vagina while masturbating himself," as well as "grab[bing] her breasts and rub[bing] himself against her body" while she was "assigned to work alone at a desk in her unit." (*Id.*) Although Scrabeck told R.V. that he would take away her family visiting privileges if she told anyone, R.V. reported the last incident of sexual contact to her grandmother, who then made a report to OYA. (*Id.* ¶ 43.) Nevertheless, despite disclosing that the sexual contact occurred, her "shame, embarrassment, mental health and substance abuse struggles" prevented her from discovering "that Scrabeck's sexual conduct toward her was sexual abuse" until 2024. (*Id.* ¶ 45.)

**C. Plaintiff S.S.**

S.S. was convicted as an adult and placed in Hillcrest in or around 2007. (*Id.* ¶ 49.) She alleges that Scrabeck abused her "at least [ten] times, beginning around the age of [eighteen]." (*Id.*) Scrabeck's abuse included "grooming S.S. by allowing her to receive gifts such as candy and clothing," and only allowing her to open the gifts "if she agreed to either allow him to grope and fondle her or in the alternative require her to touch him sexually." (*Id.* ¶ 50.) Additionally, S.S. alleges that Scrabeck's abuse included "fondling, groping, and inappropriate touching of [her] buttocks, breasts and vagina, and having her masturbate him on multiple occasions." (*Id.* ¶ 51.)

Due to her "previous experience in sex trafficking and foster care," S.S. believed that sexual contact with Scrabeck was "a normal part of life and that giving sexual favors was necessary to get what she wanted or needed from others." (*Id.* ¶ 52.) S.S. alleges that "[b]ecause of the shame, self-blame, [and] lack of understanding that the sexual contact was abuse . . . [she] did not talk about her sexual contact with Scrabeck with anyone for years." (*Id.* ¶ 55.) Nevertheless, in 2024, "when S.S. became a manager at a property management company and began supervising people herself . . . she realized that taking advantage of individuals over whom one is in a position of power or authority over is a form of exploitation or abuse." (*Id.*)

## II. PROCEDURAL HISTORY

On October 9, 2025, Scrabeck filed a Motion to Dismiss for Failure to State a Claim, arguing that Plaintiffs' allegations were time-barred under Oregon's two-year statute of limitations. (*See generally* Def.'s First Mot. Dismiss, ECF No. 8.) The Court held oral argument on February 27, 2026, and granted Scrabeck's motion to dismiss with leave for Plaintiffs to amend the complaint to plead with more specificity their theory of delayed accrual of the statute of limitations. (*See* ECF No. 25.)

Plaintiffs filed their First Amended Complaint on March 19, 2026 (First Am. Compl., ECF No. 26) and a Second Amended Complaint on April 28, 2026. (*See generally* SAC.) Scrabeck filed a motion to dismiss the claims against him in the Second Amended Complaint on May 19, 2026 (*see* Def.'s Second Mot. Dismiss) and the Court held oral argument on September 30, 2026 (ECF No. 61).

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation modified).

## I. APPLICABLE LAW

### A. Statute of Limitations

Courts must apply "the most analogous" statute of limitations from the forum state to Section 1983 claims. *See Wilson v. Garcia*, 471 U.S. 261, 267-68 (1985) (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)). When Oregon is the forum state, the statute of limitations for Section 1983 claims is governed by Oregon Revised Statute ("ORS") § 12.110, which provides that "any injury to the person or rights of another, not arising on contract . . . shall be commenced within two years" of the date of accrual. OR. REV. STAT. § 12.110(4); *see also J.M. v. Or. Youth Auth.*, No. 3:25-cv-1866-MC, 2026 WL 1005097, at *3 (D. Or. Apr. 14, 2026) (holding that "[w]hen Oregon is the forum state, the governing statute of limitations for a [Section] 1983 claim is [ORS] § 12.110, which requires tort claims to be filed within two years of their accrual." (citing *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012))).

### B. Delayed Accrual

The date of accrual for a Section 1983 claim "is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Accordingly, a Section 1983 claim accrues "not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *Bonneau*, 666 F.3d at 581 (quoting *Lukovsky v. City & County of San*

*Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008)). Although a claim ordinarily accrues on the date of the alleged injury, "[f]actual inquiries determining precisely when a plaintiff became aware of their injury is generally a question for the jury." *J.M.*, 2026 WL 1005097, at *3 (citing *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1160 (9th Cir. 2025)).

The Court briefly addresses how Ninth Circuit precedent has evolved to address alleged sexual abuse claims and how those decisions have informed opinions in the District of Oregon.

**1. Ninth Circuit Precedent**

**a. *Lukovsky v. City and County of San Francisco* (2008)**

In *Lukovsky*, the Ninth Circuit considered whether the plaintiffs' claim of employment discrimination and race-based preferential treatment in hiring were time-barred. 535 F.3d at 1046. Although the plaintiffs framed their argument around the lack of discovery of their injury, the central question before the court was which injury the plaintiffs were required to discover. *Id.* at 1048. Specifically, the Ninth Circuit had to determine whether the injury occurred when the plaintiffs learned that they had not been hired or when they learned that the hiring decisions were allegedly motivated by discriminatory intent. *Id.* The Ninth Circuit concluded that the plaintiffs' claims accrued when they knew or reasonably should have known that they had not been hired for a permanent position. *Id.* at 1051 ("At this point, the plaintiffs knew they had been injured and by whom . . . even if at that point in time the plaintiffs did not know of the legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire.").

**b. *Bonneau v. Centennial School Dist. No. 28J* (2012)**

In *Bonneau*, the Ninth Circuit applied *Lukovsky*'s framework to the plaintiff's assertion that "repressed memories of [childhood] beatings" justified delayed accrual. 666 F.3d at 581. The Ninth Circuit rejected the plaintiff's argument because he "claim[ed] he experienced physical and emotional injuries at the time of the alleged beatings." *Id.* at 579.

### c. *St. Clair v. County of Okanogan* (2025)

Thirteen years after *Bonneau*, the Ninth Circuit addressed deferred accrual in the context of alleged sexual abuse in *St. Clair*. In *St. Clair*, the Ninth Circuit rejected the district court's inference that the plaintiff's awareness that sexual contact with the defendant sheriff deputy was being exchanged for non-prosecution necessarily triggered accrual. 154 F.4th at 1157. Instead, the Ninth Circuit concluded, *inter alia*, that "because individuals who suffer such harm may not become aware of or understand the causes of their injuries until years later," the plaintiff had alleged a plausible theory of delayed accrual in light of her addiction, fear of criminal liability, and dependence on the defendant officer. *Id.* at 1156, 1160.

Unlike *Bonneau*, where the Ninth Circuit found that the plaintiff knew of his injuries and their causes when the beatings occurred, the Ninth Circuit held that the *St. Clair* plaintiff plausibly alleged that she did not initially understand the nature of her injuries at the time of the alleged sexual abuse. *Id.* In so holding, the Ninth Circuit clearly instructed that "precisely 'what the plaintiff knew and when she knew it are questions of fact,' better left for a jury." *Id.* at 1160 (citation modified) (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)).

## 2. District of Oregon Cases

### a. *Doe v. County of Josephine* (2015)

Prior to the Ninth Circuit's guidance in *St. Clair*, the district court in *Doe v. County of Josephine* rejected the plaintiffs' argument that their Section 1983 claims against Josephine County, arising from childhood sexual abuse by probation officer Ray Luckey ("Luckey"), did not accrue until they connected their ongoing psychological injuries to the abuse. Nos. 1:12-cv-2080-CL, 1:13-cv-0724-CL, 1:13-cv-0825-CL, 2015 WL 2412181, at *2 (D. Or. May 18, 2015) (noting that the "plaintiffs admit that they knew they had been abused by Luckey, and no plaintiff asserts that he did not know or realize that Luckey's abuse caused him injury at the

time"). The district court held that the plaintiffs' later discovery of the connection between the abuse and their continuing psychological injuries did not delay accrual or restart the limitations period, because accrual did not require knowledge of the full extent of their injuries. *Id.* at 6 ("[T]he fact that plaintiffs were unaware of the extent of the psychological harm they suffered does not negate the fact that plaintiffs were aware of some injury at the time of the abuse or shortly thereafter.").

Although the district court declined to find that the claims against the defendant necessarily accrued at the time of the abuse, it granted the defendant's motion for summary judgment because the undisputed record established that the plaintiffs, exercising reasonable diligence, should have discovered the facts supporting their claims more than two years before the filing of their lawsuit. *Id.* at 7-9 ("In light of Luckey's 'commonly known' and inappropriate interest in boys and the federal claims asserted against the [defendant] in 1994, a reasonably diligent investigation would have revealed the facts supporting plaintiffs' claims against the [defendant] long before these suits were filed in 2012 and 2013.").

**b. *A.B. v. Interstate Management Company, LLC* (2025)**

In *A.B. v. Interstate Management Company, LLC*, the plaintiff brought a claim under the Trafficking Victims Protection Reauthorization Act, alleging that she "was trafficked for commercial sex in Oregon through the use of force, fraud, or coercion by her trafficker M.K." No. 3:23-cv-00388-IM, 2025 WL 3254620, at *1 (D. Or. Nov. 21, 2025). In addressing the defendant's motion for summary judgment, the district court relied on the "guiding principle" established in *St. Clair* that "precisely what the plaintiff knew and when she knew it are questions of fact better left for a jury." *Id.* (citation modified) (quoting *St. Clair*, 154 F.4th at 1160). Viewing the evidence in the light most favorable to the plaintiff, the court concluded that the "coercive power imbalance" and evidence that trafficking victims may not recognize

contemporaneously that they are being trafficked supported competing inferences about when the plaintiff knew or reasonably should have known of her injuries. *Id.* at *6.

**c. *Doe v. Reese* (2026)**

In *Doe v. Reese*, a woman incarcerated at Coffee Creek Correctional Facility alleged that the defendant correctional officer asked her "what [the plaintiff] would do for him if he agreed to move her" out of segregation. No. 3:24-cv-02011-AB, 2026 WL 125380, at *1 (D. Or. Jan. 16, 2026). She further alleged that the defendant "instructed her to expose her genitals and masturbate in front of him" while he watched through the cell window. *Id.* When she questioned whether he was "serious," he responded "[d]o you want to move?" *Id.* She then "removed her pants and did as he asked." *Id.* In moving to dismiss, the defendant argued that the plaintiff's contemplation of reporting the incident at the time demonstrated that she "clearly knew the alleged incident was wrong." *Id.* at *3.

Applying *St. Clair*, the district court rejected the defendant's argument, explaining that "[l]ike in *St. Clair*, Plaintiff here alleges characteristics of vulnerability as well as a power imbalance between her and Defendant." *Id.* The court further explained that "[a]t the motion to dismiss stage, where all reasonable inferences are drawn in favor of Plaintiff, there remain factual questions as to what behavior or actions Plaintiff considered reporting in 2018" and "[i]t is not as clear as Defendant suggests that what Plaintiff considered reporting in 2018 was sexual abuse on the part of Defendant." *Id.*

**d. MacLaren Sexual Abuse Cases**

In April 2026, the district court issued opinions in a series of cases involving the alleged sexual abuse of juveniles confined in the MacLaren Youth Facility ("MacLaren"). *See J.M.*, 2026 WL 1005097; *H.A.H. v. Or. Youth Auth.*, No. 3:25-cv-2266-MC, 2026 WL 1005350 (D. Or. Apr. 14, 2026); *S.K. v. Oregon*, No. 6:25-cv-939-MC, 2026 WL 1005372 (D. Or. Apr. 14,

2026); *K.J. v. Oregon,* No. 6:25-cv-1973-MC, 2026 WL 1006010 (D. Or. Apr. 14, 2026); *T.F. v. Oregon*, No. 6:25-cv-2166-MC, 2026 WL 1006018 (D. Or. Apr. 14, 2026).

In denying the defendant's motion to dismiss in *T.F.*, the district court explained that after *St. Clair*, courts must recognize the impact that trauma may have on claim accrual:

> Both plaintiffs allege that they were repeatedly sexually abused by an authority figure while in a position of vulnerability. Both allege that they only became aware of their constitutional injury years after the fact. As in *St. Clair*, the Court must recognize the delaying effect that trauma may have on claim accrual and refrain from attempting to divine precisely when Plaintiff became aware not only of his constitutional injury, but its cause.

2026 WL 1006018, at *3.

## II. ANALYSIS

The Court now applies the delayed accrual framework set forth in *St. Clair* and its district court progeny to each plaintiff's allegations.

### A. D.R.

D.R. seeks relief for alleged violations of her Fourteenth Amendment substantive due process rights. (SAC ¶ 73.) Scrabeck argues that D.R.'s claim accrued at the time of the alleged sexual contact and is thus time-barred under Oregon's two-year statute of limitations. (Def.'s Second Mot. Dismiss at 6-9.) Accepting D.R.'s allegations as true and drawing all reasonable inferences in her favor, the Court finds that D.R.'s Section 1983 claims are not time-barred.

As a threshold matter, Scrabeck argues that under *St. Clair*, a plaintiff who did not report abuse must allege that her alleged abuser's direct coercion prevented her from doing so before delayed accrual may apply. (*See* Def.'s Second Mot. Dismiss at 7, arguing that "[t]he Court specified [in *St. Clair*] that delayed accrual in this context occurs only where there is an alleged combination of coerced sexual favors where the coercion and power imbalance together prevent a plaintiff from reporting the alleged abuse" and D.R. does not allege that "Scrabeck took action

to coerce D.R. . . . into silence"). However, *St. Clair* did not limit deferred accrual to situations where coercion prevented abuse reporting, but instead recognized that even "the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault may result in a delayed realization of the underlying harm." *St. Clair*, 154 F.4th at 1160 ("Struggling with addiction, fearful of criminal liability, and coerced by [the alleged abuser] into sexual acts, St. Clair sufficiently alleges evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing. Our decision acknowledges that the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault may result in a delayed realization of the underlying harm.").

Here, D.R. alleges that it was not until September 2024, when she "saw information online about sexual abuse in juvenile detention settings and began to reflect on her own experience with Defendant Scrabeck" that she "realized for the first time" that the sexual abuse was "unlawful and undeserved" and the "cause of many of her psychological symptoms." (SAC ¶ 37.) The circumstances surrounding D.R.'s claims are analogous to those in *St. Clair*. In *St. Clair*, the plaintiff alleged that the defendant "took advantage of her known addiction to methamphetamines and involvement in criminal activity to coerce her into a quid pro quo" of "unwanted sexual contact" in exchange for an agreement that she would not face a criminal investigation. 154 F.4th at 1156. Several years later, the plaintiff in *St. Clair* "came to understand that she had been harmed when she read a news article . . . detailing [the defendant]'s inappropriate sexual conduct with other similarly situated women." *Id.* at 1157. Like the plaintiff in *St. Clair*, D.R.'s allegations of repeated abuse by an authority figure while in a position of vulnerability as an adjudicated youth fall squarely within the factors justifying delayed accrual in sexual abuse cases.

For these reasons, the Court finds that D.R. has plausibly alleged that she did not "become aware of or understand the causes of [her] injuries until" within two years of filing her complaint. *St. Clair*, 154 F.4th at 1156; *see also Doe*, 2026 WL 125380, at *4 (denying the defendant's motion to dismiss "with respect to [Section] 1983['s] statute of limitations" on similar grounds as *St. Clair*); *J.M.*, 2026 WL 1005097, at *4 ("[T]he Court must refrain from attempting to divine precisely when plaintiffs became aware of the specific constitutional injuries alleged here and their cause." (citing *Doe*, 2026 WL 125380, at *3)).

**B. R.V.**

R.V. seeks relief for alleged violations of her Fourteenth Amendment substantive due process rights. (SAC ¶ 73.) Scrabeck argues that R.V.'s claims are time-barred because she "reported the alleged abuse in approximately 2001 to her grandmother." (Def.'s Second Mot. Dismiss at 7.) For the same reasons discussed above, accepting R.V.'s allegations as true and drawing all reasonable inferences in her favor, the Court finds that R.V.'s Section 1983 claims are not time-barred.

Scrabeck argues that R.V.'s disclosure of the sexual contact to her grandmother establishes that she "knew of the alleged abuse and the alleged cause of the abuse at the time she reported it." (*Id.* at 8.) However, Plaintiff specifically alleges that she "told her grandmother that she had engaged in some sexual contact with Defendant Scrabeck, without understanding that this sexual contact was abuse." (SAC ¶ 43.) Scrabeck responds that disclosure of sexual contact is synonymous with disclosure of sexual abuse such that any reporting forecloses delayed accrual. (Def.'s Reply at 2.) However, while a minor's reports of abuse may be enough to defeat a delayed accrual theory in some cases, here R.V. alleges that she disclosed "sexual contact," not sexual abuse. The Court finds that R.V. has plausibly alleged that she did not understand that the sexual contact was abusive at the time of disclosure.

For these reasons, the Court finds that D.R. has plausibly alleged that she did not "become aware of or understand the causes of [her] injuries until" within two years of filing her complaint. *St. Clair*, 154 F.4th at 1156; *see also Doe*, 2026 WL 125380, at *3 (finding that "[a]t the motion to dismiss stage, where all reasonable inferences are drawn in favor of Plaintiff, there remain factual questions as to what behavior or actions Plaintiff considered reporting in 2018" and "[i]t is not as clear as Defendant suggests that what Plaintiff considered reporting in 2018 was sexual abuse on the part of Defendant"); *K.J.*, 2026 WL 1006010, at *4 ("Plaintiff's allegations are not implausible—Plaintiff merely asks the Court to take his word that the traumatic effects of his alleged abuse, along with his vulnerabilities at the time, precluded him from being aware of his alleged injury until recently.").

**C. S.S.**

S.S. seeks relief for alleged violations of her Eighth Amendment right to be free from excessive and unnecessary force. (SAC ¶ 107.) Like the others, Scrabeck argues that S.S.'s claim accrued at the time of the alleged sexual contact and is thus time-barred under Oregon's two-year statute of limitations. (Def.'s Second Mot. at 6.) Accepting S.S.'s allegations as true and drawing all reasonable inferences in her favor, the Court finds that S.S.'s Section 1983 claim is not time-barred.

Similar to D.R., S.S. alleges a "'culture of punishment' at Hillcrest where staff would retaliate against youth for complaints and which caused her to believe she was at fault for the sexual contact with [Scrabeck]." (SAC ¶ 54; *see also* Pls.' Resp. at 11.) She also alleges that she was vulnerable at the time of the alleged abuse because of her prior experience being sex trafficked and in foster care. (SAC ¶ 52.) S.S. further alleges that a power imbalance existed between herself and Scrabeck, an authority figure, who "began grooming" her "by allowing her to receive gifts" but "only allow [her] to open the gifts if she agreed to either allow him to grope

and fondle her or . . . touch him sexually." (*Id.* ¶ 50.) S.S. alleges that "[b]ecause of the shame, self-blame, lack of understanding that the sexual contact was abuse, and other dynamics" she could not discover her injury until 2024, when she took on a supervisory role and realized for the first time that Scrabeck's sexual contact was abusive. (*Id.* ¶ 55.)

Pursuant to the Ninth Circuit's guidance in *St. Clair*, the Court finds that S.S.'s claims are not time-barred because she has plausibly alleged that she did not "become aware of or understand the causes of [her] injuries until" within two years of filing her complaint. *St. Clair*, 154 F.4th at 1156; *see also id.* at 1160 ("'[W]hat the plaintiff knew and when she knew it are questions of fact,' better left for a jury.") (citation omitted).

**CONCLUSION**

For the reasons stated, the Court DENIES Scrabeck's Motion to Dismiss (ECF No. 42) and the State Defendants' Corrected Motion for Joinder (ECF No. 44).[1]

**IT IS SO ORDERED.**

DATED this 13th day of November 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

[1] With respect to the State Defendants' joinder in Scrabeck's motion to dismiss, Plaintiffs allege that the State Defendants failed to provide for Plaintiffs' reasonable safety and take reasonable measures to "abate the risk" that Plaintiffs would be sexually abused by Scrabeck, that their failures created the conditions under which Scrabeck's abuse of Plaintiffs was possible, and that they did not take "reasonable, appropriate, and legally mandated steps to stop sexual abuse from occurring." (SAC ¶¶ 68-106.) Plaintiffs also raise claims of sexual and direct battery against OYA. (*Id.* ¶¶ 115-25.) As the State Defendants' counsel acknowledged at oral argument, if Plaintiffs had no knowledge of their injuries related to Scrabeck prior to the alleged delayed accrual dates, they necessarily would not have had knowledge of the State Defendants' alleged roles in causing those injuries before the accrual dates. Accordingly, the Court also finds that Plaintiffs' claims against the State Defendants are not time barred.